May it please the Court, Stacia Picard and Pam Gomez for Petitioner-Appellant James Nelson Blair. I'd like to reserve five minutes, please, for rebuttal. Mr. Blair is waiting for the Court to order his release now. After all, he has already won it. His case has been mentioned on the radio at least once a week. San Quentin has him in special security because they know he's about to be released. He's prepared for his release by ordering a large box of vitamins, which I have in my office. He's directed that we forward his magazine's descriptions to his brother's house, where he will live once this Court orders his release. He wanted to send a thank you note to a San Quentin nurse for her work with him. San Quentin became very concerned that he was suicidal because he said he was about to leave. He explained to them that this Court has already prevailed on his side and is about to order his release. San Quentin said that statement was more delusional than factual. He even sent documents to Ms. Burecure, his Federal Appellate Counsel, to keep for him until he's out. He won his release, he said, because this Court has agreed someone hacked into the Court reporter's computers and authored the transcripts to show that a particular officer arrested him when, in fact, he did not. He also won his release because someone, not him, filed a motion to suppress. His arrest was illegal because the police arrested him based on a tip from a pay phone caller. And he prevailed on his claim that he had an unfair trial because the prosecutor did not call a Ms. Dubois to testify against him. Not only is this Court about to release him any day now, but this Court has changed this cause into one for money damages. He expects this Court to order LAPD, Ms. Burecure, and State Post-Conviction Counsel to pay him damages. And this Court will transfer to him San Francisco property formerly owned by State Post-Conviction Counsel. Counsel, you've told us that we're about to release your client, but would you tell us the legal basis that you're relying upon to support your argument that he should be released forthwith? Your Honor, I am relating to you Mr. Blair's fixed false delusions. Okay, so you're doing the competency argument? Yes. Okay. These all of Mr. Blair's reasons and beliefs are genuine, long-term, fixed, and false. Counsel, it's not really up to us to do fact-finding in the first instance. It seems to me that we're limited either to determining whether the district court used an incorrect legal standard, or if not, whether its findings are supported by the record. So would you address those legal questions rather than arguing in the first instance that your client is not competent? I relate to you Mr. Blair's — yes, I will, Your Honor, thank you. I relate to you Mr. Blair's fixed false beliefs, because those are in the record, and the district court never wrestled, never challenged, never addressed those specific delusions. The court — the district court did, in fact, apply the wrong standard, and so was the standard that we aggressively disputed with the warden's counsel and with the court. It ignored the en banc decision of Mason and applied a standard inapplicable to these proceedings. So yes, it did apply the wrong standard, and had it applied the correct standard, even under its own consideration of the case, which it called a close one, a close case, we should have prevailed. Even if we proceed under the standard it did apply, the district court did commit clear error. Counsel, if we agree with you that the district court used the wrong standard, what would be the remedy that would be available to your client? We would request a remand for the competency hearing that should have happened, because not only did the district court use the wrong standard, it unreasonably and clearly erroneously limited the scope of the hearing to Mr. Blair's ability to assist federal appellate counsel. She — she related to this court, even, that she needed — the case needed a remand because Mr. Blair was unable — she believed Mr. Blair was unable to assist federal counsel who would handle the prejudice component of his excessive delay claim. Counsel, if we were to conclude that the excessive delay claim must fail as a matter of law, then how could your client be prejudiced by the use of an incorrect competency standard on the issues that are in the main merits of your appeal here? Well, Mr. Blair has not been able to prove the facts of his excessive delay claim. Well, the reason I'm asking is that I know you don't necessarily agree with this characterization, but it appears to me that our court has held that there is no such thing as an excessive delay claim in this context, that it does not state a claim as a matter of law. And so more generally, I would appreciate your comment on what effect an inaccurate competency analysis has when the merits issue fails as a matter of law. As we argued in our supplemental briefing post-Hayes decision, Hayes does not apply to this case. I understand that argument, but what I'm trying to get you to focus on is more theoretically. Let's take it out of the context of the Hayes case. Let's say that a person's only claim on appeal is that the statute that they were convicted under is unconstitutional. And let's say that the Supreme Court has held that the statute is just fine. And so in a situation where there's a legal issue and it's been decided against the Petitioner, what difference does it make in that specific context whether the Petitioner is competent? I agree with Your Honor that under that scenario that it would not make a difference whether the appellant was competent or not, although there is a question about letting him proceed incompetent. However, that is not the scenario. This Court, I don't believe, has stated explicitly that there is no relief under an excessive delay claim. In fact, other circuits have recognized that there is an entitlement for relief. All those Petitioners have failed so far because they could not show prejudice. Here, Mr. Blair, as Mr. Buecher has briefed, Mr. Blair is unable to discuss the prejudice component, and that's why we are – that's, I assume, why we litigated his competency to proceed. Mr. Blair – But wasn't that before? Why do you say the Hayes case doesn't apply? Because Hayes – Hayes states that there is no – there was no remedy for Mr. Hayes because there is no clearly established Federal law. And in Hayes, they are obviously applying the AEDPA. In Mr. Blair's case, the AEDPA does not apply because the California Supreme Court's order denying the underlying State petition mischaracterized or misconstrued his petition and did not rule on the merits. It simply – it states, we treat his petition as a request for an order directing counsel to perfect the record and file the brief. Are you talking about the 1998 California Supreme Court decision or the 2005 decision? The 1998 decision, the February 20th at ER 9-0. Well, didn't the 2005 decision decide the case on the merits and decide that he didn't have a right to speedy appeal? Well, they decided under State law because it was the California Supreme Court. But again, as Mr. Nickerson, who was State post-conviction counsel, repeated to the court – in fact, he's the one who filed the first encompassing motion in this case – that Mr. Blair wasn't able to assist him. So Mr. Blair wasn't able to tell him any facts about – Mr. Blair, of course, represented himself at the trial. He's the only one who could fill in those facts about what is missing, what would show the prejudice, what proof must be given. So, counsel, just so I understand your argument, your argument is that if the State court fails to address an issue that it no longer applies. Is that your argument? Yes, and we are supported also by the recent decision in Richter where the U.S. Supreme Court said that it may presume that the State court adjudicated the merits of a claim, quote, in the absence of any indication or State law procedural principles to the contrary, end quote. Here, the California Supreme Court explicitly refused to address the merits. It just simply treated it as a procedural – his petition as a procedural motion and denied it. But what case were you relying upon before Richter? What case were you relying upon to support your contention that if a State court fails to address an issue, then AEDPA is out the window? What case says that? Well, I believe Richter did clarify it for the litigants and for the courts on this issue. Before that, there was a 2010 Bowder v. Department of Corrections, an 11th Circuit case, per curiam. But the U.S. Supreme Court has always been clear that a Federal habeas court must presume that the State court addressed the merits, even if it says nothing. Here, Richter clarified, if it says something contrary, then you may – that presumption is gone. The State court did not adjudicate the claim on the merits. But I understand your argument, but I'm just saying, why would that mean that we no longer use the AEDPA standard of review? Because AEDPA only gives the – the Federal courts are only required – I'm sorry, Federal courts are required to give great deference to State court decisions. That, as Richter and Penhoster have said – stressed to us the past few weeks. The – however, it has acknowledged that there is a scenario where the State court has not addressed the merits, then those cases do not – the AEDPA does not apply to them because there is no – Well, the deference maybe isn't due. Maybe it's de novo as opposed to deference, but I don't know why AEDPA still wouldn't apply to that, the standard of AEDPA, whether or not the decision or the denial of relief was contrary to or an unreasonable application of Supreme Court law. Why wouldn't that standard still apply? Because the – Federal courts are required to apply that standard only when there has been adjudication of the merits. 2254d is explicit about that, that only when there has been adjudication of merits. In the past decades since the passing of the AEDPA, we've litigated that issue, and now the court has clarified in early – past early and in even Rashadi and other cases that where the State court – even when the State court is silent, even when there is a postcard denial, the State court must be afforded great deference and then AEDPA applies. Richter clarified that that deference, that the standard review of AEDPA does not apply where the State court expressly did not adjudicate the claim on the merits as here. This court has asked about the relief that we would want. We would ask for a remand for the competency hearing that Mr. Blair should have had, and that was one that is based on the entire petition, which would have been the case now pending before the district court. This was an issue we litigated and lost when the magistrate judge erroneously and improperly limited it to the scope of the appeal. I would like to stress again that Mr. Blair believes before the court now is more than one issue. This is another fixed false belief of his. How would the record differ depending on the use to which a competency finding or finding of no competency would apply? In other words, the district court did take evidence. It heard from competing experts and had other evidence in front of it before deciding whether he is competent. And you're saying, well, they should have been thinking about more kinds of competence, but how would that have altered the appropriate scope of the evidence? Well, I have two answers to that. The first is the district court committed clear error by giving no weight to the psychiatrist, Dr. Dudley, who actually observed Mr. Blair and his counsel attempting to discuss his case, Mr. Blair attempting to assist counsel in his case. Dr. Dudley observed that, and he was ‑‑ it was confirmed for him during that evaluation that Mr. Blair was unable to consult. So ‑‑ That's not ‑‑ that's not responsive to the question of how the evidence itself would have differed, which is what I'm trying ‑‑ maybe I didn't communicate well. No, I'm sorry, Your Honor. I was ‑‑ the second part is the magistrate judge seemed to have given a lot more credit than was due to Dr. Katina, who did not evaluate. So we would ‑‑ evaluation of Mr. Blair by respondent was something we did not oppose. We did not. Well, if I ‑‑ I guess it appears to me that your answer suggests that there isn't more evidence to be brought to bear as much as you disagree with the way the district court looked at the evidence that was introduced. And I'm trying to sort out those two things. I'm sorry. I meant to convey to the court that we would continue to try to work with Mr. Blair about him submitting to an evaluation by either a court‑appointed expert or an expert for the case by the respondent, respondent warden. That, according to the magistrate judge, was a significant fact that he completely missed or that he gave ‑‑ I'm sorry, that he gave no weight. Well, as I understood what the district court did, it sort of said, well, I'm not going to rely on anybody's expert because they more or less cancel each other out. So I'm looking at other aspects of the case. Do you read the decision differently than that? Yes, I believe that was a clear error because Dr. Dudley observed what Keenan said he wanted to do, which was to listen, to see, hear Mr. Blair and counsel attempting to work on Mr. Blair's case. That is the heart of the competency. That is the heart of Mr. Blair's competency. Dr. Dudley saw it. So for the district court to say that it was offsetting versus Dr. Keenan's mere record review was a clear error. So we would ‑‑ on remand, we would stress, we would try to work with Mr. Blair about him submitting to another evaluation, independent, one by the court or one by the warden, because according to the magistrate judge, that was significant to him. We think that we should have prevailed on that Mr. Blair was incompetent because Dr. Dudley observed the very event that is the heart of this case, counsel attempting to work with Mr. Blair. So we would go back and try to work that out again. There is also more evidence of Mr. Blair's incompetency. It is a continuing ‑‑ the Supreme Court has observed that it is ‑‑ incompetency is a spectrum. But for Mr. Blair, it is a continuing as written by Mr. Blair's own hands to the district court and to this court and in his dealings with us. So remand, I believe, would be the appropriate remedy here in light of the magistrate judge errors in weighing Keenan versus Dudley. But counsel, the magistrate judge stated in the reported recommendation that Dr. Dudley acknowledged that he never opined on whether Mr. Blair understood the nature of the proceedings. And so why wouldn't that be sufficient to support the magistrate judge's decision regarding which expert to credit more, whether or not to disregard both experts' opinions? Why wouldn't that be within the magistrate judge's authority? This is respectfully one of the facts that the magistrate judge took out of context. The first declaration that Dr. Dudley submitted to the district court was in support of the competency hearing. Thereafter, the court ordered that the declarations by experts will comprise the direct testimony. At that point, although he said it in his first declaration, Dr. Dudley said it again explicitly, more explicitly in his second declaration, the second which comprised his direct testimony. So I respectfully relate to the court that that was a – that was not the case. That was not the situation. That is not what happened. Dr. Dudley did opine on both facts, both prongs as required. And he did find that Mr. Blair is psychotic. He suffers from a delusional disorder. And more importantly, this delusional disorder is specifically about what is before this Court, which is his competency to proceed. There's been talks about laxatives and other things, but – and those, I think, show how mentally ill he is. But we have shown, and we have shown to the district court, that Dr. – Mr. Blair's I believe that that is my time before reserving five more minutes. You have an extra few minutes above the 5 if you want to save for rebuttal. I'm sorry? I said you have an extra few extra minutes in addition to the 5 if you'd like to save them for rebuttal. Yes, I would, Your Honor. Thank you. May it please the Court? Scott Hayward on behalf of the Respondent. I'd like to start off by discussing a line of questioning that Judge Graber started when appellant's counsel was arguing concerning what's the impact on the competency issue if relief has to be denied in this case on some grounds? Because I think that that's really pertinent. Do you concede that the district court failed to follow binding precedent from this court? Do I concede that the district court failed to follow binding precedent? Right. In deciding the competency issue. Not at all, Your Honor. Why not? Okay, I'm going to have to go back for a second. You'll have to indulge me because the background is required on this. You're talking about the Mason case and whether or not it was Aaron failing to follow that. And it's a significant issue, assuming that we got there, assuming that the competency mattered. And I'll get back to that because I want to directly answer your question. You know, there are no guidelines or rules or statutes that tell us how to handle these competency to proceed hearings in district court. Not Gates, not Nash, not Gonzales. The three cases out of this court discuss how we're supposed to do it. And that was a big concern of both the parties in this case after the remand was ordered for the competency hearing. One of my concerns was that I didn't want to do anything that unnecessarily created an appellate issue with respect to the competency proceeding. The only guidance that we had at all is in a footnote in the Gates case where Judge Kaczynski wrote that the standard for competence at this stage of the proceedings might be less than it is at trial, but the court didn't go on to decide whether that was true. So that was all that we had. The thought that I had at that stage was, well, considering that I don't want to is to treat this proceeding the same way that it would be treated at trial, at a time where the criminal defendant has a presumption of innocence, has an actual constitutional right to be competent, and has a full-fledged liberty interest. If we did that, then there's no basis to complain about the process that he received with respect to the competency hearing. And that's what happened. That's ultimately what happened in this case. Well, didn't the district court, though, make a decision not on competency per se, but on the standard of reviewing competency? In other words, it's quite different to say someone hasn't carried their burden of proof, and therefore that person loses. It's quite different to say the light was red or the light was green, no matter what my standard of review might be. And so let me get to the distinction between the competency issue in Mason and the competency issue in a case like this, or a case like Gates. I'm going to go back to the Gates case just for a second, because there's another paragraph in there where I think Judge Kaczynski did a good job of explaining the distinction between these two competency issues. He didn't discuss Mason directly, but he discussed Whitmore, which had the same issue. He discussed this in the context of whether or not a stay versus appointing a next friend was the appropriate thing to do when a litigant, a petitioner was incompetent. And what he did was distinguish between a Mason-type situation where the question is, is the litigant competent to waive his claims, to withdraw his petition, and effectively proceed towards execution? And Judge Kaczynski said that in that case, he doesn't need to be able to communicate with anybody, and so a next friend would be able to represent him and decide if that's in his best interest. But in a Gates-type case, the whole point of the litigant being competent is so he can assist his lawyers. So there's a distinction drawn between the two types of competency, competency to proceed, to pursue relief, and competency to waive relief. And I think that that is the case. Except that in Mason, this Court cited and quoted from a Supreme Court case that put together both the question of continuing further litigation or abandoning further litigation, and lumped those two together with respect to the standard for considering competency. So I don't ‑‑ I guess I'm at a loss to understand why the Court didn't follow Mason. Well, Your Honor, again, I think that the reason, if you read the R&R, which was signed off by the district court, part of it had to do with stipulation between the parties, that we'd agree that the Federal statute ‑‑ Now, let's leave that aside, because as I read what the Petitioner did, they specifically reserved this issue. They stipulated to some things, but they did not stipulate that Mason doesn't apply. And I'm fine to do that, Your Honor, because I prefer that this be addressed on a broader issue. So it was not ‑‑ I'm speaking only for myself, obviously, but I see no invited error here. That's fine. And like I say, the magistrate did what he did. The district court signed off on it, and I think there's support for that. But the broader question, I do believe, is important in terms of what is the standard that should apply down there. Because if Mason is the standard, as interpreted by respondent ‑‑ as interpreted by Petitioner, then here's what happens. All he had to do, somebody on his behalf had to say, we think he's incompetent. That now triggers the hearing. If the presumption is now going to be one of incompetence for Mason, then the burden is necessarily placed on us, without any proof that he was ever incompetent, to demonstrate that he's not. And if he refuses to come out of his cell and be examined, then it's almost impossible for us to do that. That can't possibly be the correct way to do it, which is why I suggest that Mason is really limited to the circumstances of that case, that maybe that test works when you're talking about, can somebody waive their claims and withdraw their petition and proceed to be executed, versus a situation where, I mean, if Mason is to apply here, Your Honor, then it's applying in a situation where the Petitioner's rights are substantially less than they would be at trial, and he doesn't come anywhere close to getting the protection that Mason would afford at trial. At trial, in both state and federal court, the presumption is one of competence, and that has to be rebutted by a preponderance of the evidence. And again, that's at a time where he has full constitutional protection, a full liberty interest, a presumption of innocence, and a due process right to be competent. Once we get here, the basis for the right to be competent in and of itself is ambiguous. Gates says it's based on the statutory provision, not on the Constitution. That hasn't been decided. Yes, Your Honor. Counsel, the fallacy with your argument is that once we're on appeal, we have the whole trial of proceedings that we can look to to determine whether or not there's competence, competency. And are you asking us to just totally disregard Mason, then, in making our ruling? What I'm saying is that Mason can't possibly be the standard. But it is. Respectfully, Your Honor, I disagree. Mason is the standard for those set of circumstances. Mason, listen, Mason was a pre-Gates case. It didn't contemplate this type of competency. Mason contemplated what do we do if somebody wants to withdraw their petition, which is effectively going to lead to this person's execution. How do we resolve that? But it's still the issue of how to determine competency. It's in a different context, admittedly. But the core issue is still how do we determine whether or not a person is competent. Then you end up, Your Honor, like I said, with a test that is so contrary to the test you have at trial. It becomes more difficult at a habeas stage where there's limited, if any, constitutional protection with respect to competency. The standard gets turned on its head the farther we get away. Perhaps. But that doesn't justify us disregarding our precedent. That's the difficulty you have. It's not a matter of disregarding it, Your Honor, but it should be compartmentalized. It should be limited to what was happening in that case. Mason didn't have anything to do with competency to proceed. It didn't contemplate that. Neither Gates. But it contemplated competency. I mean, we don't really parse in that. If there's a legal issue, we don't necessarily parse the facts to say in this context it's the standard, in a different context it isn't. That's the difficulty I'm having with your argument. Bottom line, it was still a competency determination. Well, but we consider competency to be executed, and that test is different from competency to stand trial. So it happens. There are certain situations where the test is different. But, again, you'd be talking about taking a habeas case that would now stand on its head, the test for competency, at a time where the Constitution doesn't compel it. And that just doesn't make sense. You don't have to overrule Mason. You don't have to disagree with Mason. But you could limit Mason to what was going on there in light of the different procedural posture that we have here, just so it makes sense whatsoever. If I can go back just for a second to the original point that I wanted to make, which was much of this becomes academic if relief has to be denied in this case. If it's a result of the appeal becoming non-justiciable because there's no remedy that can be provided or a matter of Hays binding the decision in this Court that there's no clearly established law and that relief must be denied, or even under this Court's pre-Hays authority that said for this type of delay claim, when you're complaining about the delay with appeal, with an appeal, a State court appeal, at a minimum, you have to show that you were deprived of some type of fairness with respect to the appeal itself. Even if it's that, that hasn't happened in this case. This Court waited after the State appeal initiated to see precisely what was going to be the outcome. To this day, there's no claim that that appeal was rendered unfair or the integrity of it was compromised in some way because of the delay that took place between the time that Mr. Blair was convicted and the time that the opening brief was filed. So there is no basis upon which to grant relief in this case. And because the case absolutely has to be denied, the competency issue is really nullified at this point. Do you agree with opposing counsel that the ECBA standard does not apply in this case? Not at all, Your Honor. I mean, I was very surprised to see that argument for a couple of reasons. The first reason is that Mrs. Bacour, when she filed the opening brief in this case in 2001, conceded that the AEDPA did apply. And that was in light of the same ruling that counsel was challenging now. In this Court's opinion, when it withdrew submission of the matter to wait and see what happened in the California Supreme Court, it explicitly indicated that this was an AEDPA case. And as far as I know, that would be law of the case at this point in time, and for good reason. It was very difficult for me to figure out precisely what the nature of petitioner's complaint is in this respect. I think it's the fact that when Mr. Blair filed his pro per habeas petition in state court, raising his claims that his appeal was taking too long, he didn't ask for release from custody from the California Supreme Court. All he asked for at that time was an order directing his attorney to perfect the record and to file his appeal. So what the California Supreme Court did, this is a precise quote from their ruling. Petitioner's pro per petition for writ of habeas corpus treated here as a request for an order directing appointed appellate counsel to perfect and file the appellate record and to file petitioner's opening brief is denied. It simply reclassified the document that he filed from a habeas petition to a motion for particular relief, because he wasn't asking for the type of relief that you would get in a habeas case. But the basis for his request for relief was still several allegations of constitutional violation, and the California Supreme Court denied it. His denied is a silent denial, which under U.S. Supreme Court authority and this court's own authority constitutes a denial on the merits. I don't know how it could be anything else. So, no, we strongly disagree with whether or not the AEDPA governs this case. Very quickly, Your Honor, the only further point that I'd like to make is petitioner's complaint about the hearing itself doesn't really have much to do with the quality of the evidence that was submitted. In other words, there's no complaint that evidence came in that shouldn't have or evidence that evidence didn't come in that should have. They're just dissatisfied with the standard issue, which is legal, and then they just take issue with the way that the magistrate judge waited, giving petitioner the entire benefit of the doubt, the issue as to whether or not he's mentally ill, the issue as to whether or not he can work with his attorneys or understands the nature of these proceedings at best is debatable. Well, mentally ill isn't really the question. A person can be mentally ill in some respects and still be competent to assist counsel. Without a doubt, Your Honor. So is there any doubt that he suffers from some form of mental illness? There's an absolute doubt. There's an absolute doubt about that because the only doctor ever to diagnose him, the reason why it matters is because he can't be competent without being mentally ill, not under Federal law, not under California law. He can't be competent or incompetent. He can't be incompetent without being mentally ill. If I said competent, then I apologize. The statutes, both the Federal statute governing competence to stand trial and California statute require that as a prerequisite. So that was the first issue that we dealt with in this case. Is he mentally ill? The only doctor ever to diagnose him such is Dr. Dudley who did that by observing him for 90 minutes. This in the face of decades worth of records that show that his behavior could easily be attributed to a personality problem and not mental illness and the fact that no doctor primarily charged with his care while he's been incarcerated has ever diagnosed him with a mental illness. And Dr. Keenan's opinion on the matter was simply that Dr. Dudley's opinion is not supported by the evidence. There isn't enough reliable evidence to conclude the way he did. So, again, on that issue, best case scenario, it's debatable. And if it is, then the magistrate judges and district courts finding in this respect cannot possibly be clear error. It can't be, you know, extremely incorrect. It's not. And the same thing goes once you get into past mental illness to the actual test for competency. Whether or not he understands the nature of his proceedings, he started them. And he continues to request things from this court and the district court. He clearly understands that he's involved in post-conviction litigation. Whether he can communicate with his attorneys, well, that comes down to whether or not he's unable to do so or he chooses not to do so. And, again, to the extent that the evidence is debatable on that point, the district court's decision in that respect has to be upheld because it wasn't clear error. Counsel, you said that you are not asking us to overrule Mason but to just limit it. How would that ruling read? What would we hold in limiting the holding of Mason? I think what you could hold is the fact that Mr. Blair received the full protection that a criminal defendant would receive at trial in either a Federal case, Federal criminal case, or a California criminal case was fair process. And that to the extent that Mason says otherwise, Mason is limited to the circumstances of that case. But what do you do with the language that just before the conclusion of Mason, we wrote that we recognize that the Supreme Court held that it did not by a preponderance of the evidence that the defendant is incompetent. This holding does not dictate the correct procedure for determining mental competence in a Federal habeas proceeding. So it appears that the panel recognized the difference between trial and habeas, yet made the distinction that in a habeas proceeding, the test for determining competence is different than one for trial, and it did it advisedly. So how can we limit that holding in view of the fact that it appears that the panel had that exactly in mind? I think it's broad enough that you could still limit it to the competency issue in that case, which didn't have anything to do with whether somebody was able to proceed to litigate, to pursue relief, which is what happens at trial and which is what happens at trial. Why is it analytically different to determine competence to pursue a claim or to abandon a claim? Aren't they just two sides of the same coin? I don't know that that's necessarily true, Your Honor. I mean, there certainly was a distinction drawn in Gates with respect to what type of remedy you afford, whether or not you can give somebody a next friend, because there's a difference for sure, because in that situation, when you're talking about withdrawing relief, appointment of a next friend or a guardian ad litem is sufficient if that person is deemed to be incompetent. But under this Court's jurisprudence currently, when you're talking about the ability to proceed, that's not. A stay has to be imposed. So there is a difference. There's a difference between those two situations. And I guess a bottom line situation is that if the Court was unwilling to do that, well, I don't know. I don't know. The best answer I have for you is that I think that Mason really can be limited to what was going on in that case without offending the decision and without being disingenuous, and that if there's a higher court that disagrees with you on that point, someone would be free to pursue that and seek it. But I think that that's a fair and equitable resolution, again, considering the process that he actually received, which was more than he was entitled to, probably. Well, the question about the burden of proof is not really specifically about process in the sense of what evidence was admitted or how he was dealt with. It's a question of how the court arrived at a finding of competence or incompetence, which is somewhat of a different question. I'm not sure why the fact that he otherwise received due process insulates that if it was an incorrect analysis from having to do the correct analysis. Well, your argument, as I understood it, was, well, he received all the process he was due, and therefore he can't complain about where the burden  was, but if the district court was incorrect in the way it thought about the competency issue, why isn't that redressable by telling the district court to go back and analyze it correctly? If that were the case, Your Honor, if this Court finds that Mason compels the conclusion that the district court did it wrong, that it misapplied the evidence, that that's the only thing that you could do is say, no, Mason applies just like Petitioner has been arguing for all these years, and go back and analyze the evidence in that capacity. All I'm saying is Mason can't possibly be correct. It just can't. Well, whether it's correct or not is irrelevant to a three-judge panel that's charged with following it and, respectfully, is also irrelevant to any district court in the circuit that has to follow it, if it's applicable. If it applies as broadly as is being suggested, and all I'm saying is that doesn't have to happen. There's no problem that I foresee with limiting Mason to what happened in that case. The thing, the rule is, if somebody wants to withdraw their petition, which will result in them proceeding to execution, what Mason says is, there's no burden of proof, and so long as the preponderance of the evidence shows that he's competent to do it, then he can do it. But Mason also says, this is how you determine competency in a habeas proceeding as opposed to at a trial. So we, I mean, I don't see how we can ignore that language. Well, you know, again, that's stated pretty broadly, Your Honor, and again, it was, I don't know that they, to the extent that they're trying to apply it outside the context of that case, maybe it was dicta. The whole thing gets voided if we get back to the beginning of assuming that relief has to be denied in this case. The matter becomes irrelevant, and that really is the most solid way to dispose of this issue, because there are some complicated matters that the court doesn't necessarily have to reach, and that would be one of them if that happened. But if for some reason the court finds that either the case is justiciable or that there is a possibility of relief, and therefore the competency issue matters, what I've given you on Mason is the best that I have. And if the court felt otherwise, then you have to act accordingly, unless the court has any further questions. Thank you, counsel. Thank you, Your Honor. Your Honors, I would just like to respond to a couple of legal and factual points. Of course, Mason applies, and again, if taking the magistrate judge's statement after the hearing and his review of the evidence, he said it was a close call, then on that alone we should have prevailed. First of all, one can be incompetent but not mentally ill. After all, we have a client in our office who suffers from a mental disorder. He had a cardiovascular accident, so the spectrum of what causes inability to assist isn't as narrow as respondents suggest. As for his factual arguments about there are decades of records, let me just clarify, the last time a court evaluated Mr. Blair's competency when he was represented by counsel was the 1971 criminal case. And their counsel successfully pursued and prevailed on a not guilty by reason of insanity. At that time, the psychiatrist who evaluated him at Tascadero stated that he was completely out of it. And Mr. Blair, once he regained some competency, he said he had no idea what had happened in the nine months, which was the trial and the underlying crime. Then we fast forward to the next time that Mr. Blair's case was evaluated, it was by Dr. George Woods, whose declaration post-conviction counsel filed before the California Supreme Court and which Ms. Buecher filed in this court. And Dr. Woods diagnosed Mr. Blair as possibly schizophrenic or schizophrenic. Respondent gives, and the court, the magistrates give entirely too much credit to San Quentin. San Quentin itself, and I will read from one of their own records of a mental health evaluation, they state that this evaluation is for the purpose of this routine 90-day brief clinical interview was to assess adaptive functioning. It should not, underline not, be construed as an attempt at an in-depth diagnostic interview. These are the types of evaluation that San Quentin conducts. May I ask you about another subject? Do you agree that if the merits, if the issue is barred, that the court should be able to make a decision, whether we can now hear this case and grant relief because of a delay? If we couldn't grant relief on the basis of a lengthy delay, does it then matter about the competency? Well, again, I believe the court would only come to that conclusion if it rejects Richter and the other authorities stating it would. All right. Well, just don't give me that answer. Give me the first answer, and then you can go to the second. The first answer is that I don't believe so, because this is considering a petition raised by a pro se Petitioner appellant in a capital case. He did not have counsel until long into proceedings. He's never had the opportunity to develop the facts. If the court says that there is no legal remedy, then I believe that the claim would be moot then. And then the competency issue would not matter. It would not matter. And, in fact, it would not matter to the point that we would move the court, request the court remand for evocateur of the findings below. One more point about the San Quentin evaluations. They state that they are conducting these sell-side visits for compliance with some standards of adult correctional institutions. Another evaluation of those revealed further what the evaluation comprises, where they stated Mr. Blair could not spell world, W-R-L-D, backwards, and where he could not repeat a short memory test of three items. He even failed that. And we suggest and we urge that this is not, San Quentin does not conduct the type of evaluation that Dr. Begley did, which was to view Mr. Blair consulting with his attorneys, attempting to consult with attorneys about the underlying facts of this case. Is there no further questions? Thank you, counsel. Thank you. The case just argued will be submitted. The court will stand in recess for the day. Thank you all very much. Thank you.
judges: Reinhardt, Graber, Rawlinson